IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------
                                              C.A. No. 12-1411-GMS
KAROLINA KARPOV,                        )
                          Plaintiff,    )
                                        )
              -v-                       )      MOTION FOR SUMMARY
                                        )      JUDGMENT AGAINST BOTH
VLADIMIR KARPOV and SVETLANA            )      DEFENDANTS
KARPOV,                                 )
                                        )
                          Defendants.   )                FILED
-------------------------------------------------------

                                                     NOV 20 2013

                                              U.S. DISTRICT COURT
TO THE COURT AND DEFENDANTS,                  DISTRICT OF DELAWARE

Plaintiff pro se, KAROLINA KARPOV, asks the court for Summary Judgment against
both defendants based upon the following stated pursuant to the penalties of perjury of
the State of Delaware:

1.      I am the Plaintiff, KAROLINA KARPOV.

2.      I filed suit on May 23, 2012 in New York State against the defendants, my
adoptive parents. I attach a true copy of that complaint as Exhibit A.

3.      I did so because I was the victim of years of childhood sexual rape by Vladimir
Karpov while Svetlana covered up his acts and beat me to stay quiet.

4.      I allege childhood sexual abuse, intentional infliction of emotional distress,
negligent infliction of emotional harm, battery, assault, false imprisonment, abduction,
seduction, child exploitation, emotional abuse, neglect, abandonment, gender violence,
loss of consortium and Minor's Loss of Support or Parental Relationship.

5.      Vladimir and Svetlana merely deny my factual allegations (Exhibit A and B in
turn) although one sat in prison for more than six years and the other fled to Nebraska.

6.      There is nothing for a jury or the court to decide.

7.      Federal Rule of Civil Procedure 56 provides that summary judgment shall be
entered if "there is no genuine issue as to any material fact and that the moving party is
entitled to judgment as a matter of law." "[T]he availability of summary judgment turn[s]
on whether a proper jury question ... [has been] presented." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 249 (1986). "[T]he judge's function is not himself to weigh the
evidence and determine the truth of the matter but to determine whether there is a
genuine issue for trial." Id. In making that determination, the Court is required to believe

the non-moving parties' evidence and draw all inferences from the evidence in the non-moving parties' favor. Id. at 255; Eastman Kodak Co. v. Image Technical Services, Inc. , 504 U.S. 451, 456 (1992).

8.     I am the victim of sexual enslavement by the defendants. I detail in my complaint the steps the defendants took in bringing me into the United States from the Ukraine in 2001 when I was a young girl. See my Complaint at D.I. 2, paras. 38 - 42.

9.     Defendants brought me into this country so that Vladimir could continue his habit of sexually gratifying himself with underaged girls and so that Svetlana could keep her own daughters safe from Vladimir's sexual urges. See D.I. 2, paras. 43 - 78.

SUMMARY JUDGMENT AGAINST VLADIMIR KARPOV

10.     Vladimir threatened me to stay quiet. See D.I. 2, paras 79 - 80.

11.     I explained in graphic detail what he did with me sexually. See D.I. 2, paras 45 - 47, 52, 53, 54, 64, 65, 66, 67, 69, 81, 92. Vladimir provided no explanation of why these acts did not happen or why he accepted a plea of guilt and accepted more than six years of prison.

12.     There were many more sexual assaults upon me than I show in my complaint. I cannot recall each and every detail that took place on each and every day. I was seven years old when Vladimir started raping me.

13.     Svetlana beat me. See D.I. 2, paras 83, 86, 88.

14.     Vladimir Karpov fled across the country and was captured in California on a Delaware warrant.

15.     On August 1, 2008, Mr. Karpov accepted a plea deal and was sentenced for Rape 3rd Degree to 12 years at level 5 (prison) suspended after serving 5 years followed by level 4 (halfway House).

16,     I am that victim.

17.     Next 2 years at level 3 (probation) where he will be monitored by the Adult Sex Offender Probation Unit.

18.     He was also sentenced for Continuous Sexual Abuse of a Child to 7 years of level 5 (prison) suspended after serving 2 years for 2 years at level 3 probation.

19.     I am that child now turned adult.

20.     This probation runs at the same time as the probation for Rape 3rd Degree charge.

21.    Mr. Karpov is registered as a Tier 3 sex offender which includes full community notification including his photo being posted on the internet as a sex offender. There is nothing for a jury to decide given this information.

22.    Mr. Karpov also must undergo a sexual disorders counseling program.

23.    Arguably, Mr. Karpov's behavior has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. A jury is not needed to make such a finding.

24.    However Mr. Karpov merely denies my allegations in my complaint against him. He admitted to the criminal charges in a more stringent proceeding but here in civil court, he didn't do it?

25.    His strategy requires no trial. He denies ever having had sex with me as a child despite years of sitting in prison and no rational jury or court would ever agree with him.

26.    I move for summary judgment against Vladimir Karpov as to all claims: childhood sexual abuse, intentional infliction of emotional distress, negligent infliction of emotional harm, battery, assault, false imprisonment, abduction, seduction, child exploitation, emotional abuse, neglect, abandonment, gender violence, loss of consortium and Minor's Loss of Support or Parental Relationship.

27.    I ask to proceed to damages thereafter. I had medical records sent to the court.

28.    Today, taxpayers are funding my treatments for post traumatic stress disorder and other health problems. Vladimir must pay instead as a consequence of his tort.

SUMMARY JUDGMENT AGAINST SVETLANA KARPOV

29.    Svetlana acted together with Vladimir. How could she live in the same home as him and defend against my complaint by saying she knew nothing was wrong and did nothing wrong?

30.    She traveled to the Ukraine to pick me up from my adoptive family there. See D.I. 2, para 38.

31.    After I told Svetlana's daughter Olga who told Svetlana what Vladimir was doing with me in my bed at night, *Svetlana told me that she knew that Vladimir had that "problem" because he sexually fondled Svetlana's sister, Sasha.* See D.I. 2 para 60.

32.    The problem specifically is a pedophilic attraction to underaged girls and a sex drive that include sexual intercourse with underaged girls.

33.    Svetlana's sister, Sasha, was a minor at that time.

34.    Svetlana did not want an additional child in the home. Svetlana then told me she has many children by Vladimir and was not interested in having adopted me in the first place. See D.I. 2, para 61.

35.    I explained how and what Svetlana knew about what Vladimir was doing to me throughout my complaint. See for example, D.I.2. paras 87, 95.

36.    Svetlana, like Vladimir will simply deny all allegations and argue that Vladimir's incarceration was false.

37.    In deciding a summary judgment motion, the court does not take defendant's arguments in light favorable to them, but rather takes plaintiff's allegations in a light favorable to plaintiff.

38.    There is also the problem Svetlana faces if she denies everything before a jury because denials of child rape even after Vladimir's incarceration and flight across the country to escape a warrant for his arrest flies in the face of a parent's duty to a minor child. Denial by Svetlana signifies nothing more than a casual indifference to her responsibilities as a parent and no jury is needed to arrive at that conclusion.

39.    Svetlana's behavior is literally criminal.

40.    I move for summary judgment against Svetlana Karpov as to all claims: childhood sexual abuse, intentional infliction of emotional distress, negligent infliction of emotional harm, battery, assault, false imprisonment, abduction, seduction, child exploitation, emotional abuse, neglect, abandonment, gender violence, loss of consortium and Minor's Loss of Support or Parental Relationship.

41.    I ask to proceed to damages thereafter.

42.    Today, taxpayers are funding my treatments for post traumatic stress disorder and other health problems. Svetlana must pay instead as a consequence of her tort and no trial is needed as to any facts in this case against her.

KAROLINA KARPOV

Dated: November 13, 2013

Attachments:  Exhibit A, Complaint (original in court file)
              Exhibit B, Answer by Vladimir Karpov (original in court file)
              Exhibit C, Answer by Svetlana Karpov (original in court file)
              Exhibit D, Arrest Letter August 4, 2007 (business record)
              Exhibit E, Sentencing Letter September 19, 2008 (business record)
              Exhibit F, News Articles July 7 and 8, 2007 (newspapers)

CERTIFICATE OF SERVICE

I affirm I mailed by first class mail this Opposition to Motion For Extension of Time to
File Answer to Oppose Plaintiff's Motion to Strike to Defendant Svetlana Karpov, PO
Box 80245, Lincoln, Nebraska 68501. I also affirm I mailed an original of this
application to Vladimir Karpov at the James T. Vaughn Correctional Center 1181
Paddock Road  Smyrna, Delaware 19977 and to the Clerk of Court, United States District
Court, District of Delaware, 844 North King Street  Wilmington, DE 19801.


KAROLINA KARPOV

Dated November 13, 2013
         18.

# 12 CV 03649

Karolina Karpov Apt. 2A
305 Mill Street Apt. 2A
Poughkeepsie, N.Y. 12601
(845) 559-9010
*In Propria Persona*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

Karolina Karpov,

                    Plaintiff,

            v.                                    COMPLAINT

Vladimir Karpov and Svetlana Karpov,
                    Defendant(s).
_____

PERSONAL INJURY ACTION



Introduction

1.  This action seeks monetary and injunctive relief from the defendants for childhood sexual abuse, intentional infliction of emotional distress, negligent infliction of emotional harm, battery, assault, false imprisonment, abduction, seduction, child exploitation, emotional abuse, neglect, abandonment, gender violence, loss of consortium and Minor's Loss of Support or Parental Relationship.

Jurisdiction and Venue

2.  The court has jurisdiction to hear the matter pursuant to 28 USC 1332 as the parties are citizens of different states and the amount in controversy is in excess of $75,000.

3.  The court has supplemental jurisdiction pursuant to 28 USC 1367 to hear plaintiff's state law claims because those claims are related to plaintiff's federal claims if any and are inextricably intertwined and arise out of a common nucleus of related facts.

4.  Venue is proper in that plaintiff's residence is within the Southern District of New York (County of Dutchess).

PARTIES IN THE COMPLAINT

Plaintiff

Exhibit A
1

5. I am Karolina Karpov.

6. I am domiciled in Dutchess County, New York State.

7. I am 18 years of age.

8. I am bringing this lawsuit immediately upon achieving 18 years of age.

9. I am gravely troubled by post traumatic stress disorder, acute anxiety, and suicidal behavior.

10. I was used as a sexual service provider starting at the tender age of seven (7) for defendant Vladimir Karpov.

11. All events that make up this complaint took place between the time I was seven (7) years of age and approximately fourteen (14) years of age.

12. I am a black female.

Non-parties

13. My adoptive siblings are:

        a. Kristina Karpov

        b. Olga Karpov

        c. Edwin Karpov

        d. David Karpov

        e. Victoria Karpov

        f. Emily Karpov

        g. Mark Karpov

        h. Helen Karpov

        i. Timothy Karpov

        j. Susanna Karpov

        k. John Karpov

        l. Jeremiah Karpov

2

m. Phillip Karpov

14. My other relatives are:

    a. Grandmother Katya (Svetlana Karpov's mother)

    b. Grandfather Vladimir Karpov (Vladimir Karpov's father) deceased

    c. Great Grandfather Joachim Kushnir (Vladimir Karpov's great

grandfather) deceased

    d. Sasha Zoloznaya (Svetlana's sister)

15. I attended the following:

    a. Tome School

    b. Elkton Christian School

    c. West Park Place Elementary School

16. I went to church with:

    a. Pastor Anatoly Vysotsky

17. My origianl adoptive parents were:

    a. Anna Horbaty

    b. Slavik Horbaty

Defendants

18. Vladimir Karpov is a white male.

19. Vladimir Karpov is currently and at all times in this complaint my adoptive father.

20. Vladimir Karpov is a naturalized citizen of the United States.

21. Vladimir Karpov is approximately 55 years of age.

22. Vladimir Karpov built a substantial real estate business during all times in the complaint.

23. Vladimir Karpov is incarcerated at Delaware State Prison.

3

24. On August 1, 2008, Mr. Karpov was sentenced for Rape 3rd Degree to 12 years at level 5 (prison) suspended after serving 5 years followed by level 4 (halfway House). Next 2 years at level 3 (probation) where he will be monitored by the Adult Sex Offender Probation Unit.

25. He was also sentenced for Continuous Sexual Abuse of a Child to 7 years of level 5 (prison) suspended after serving 2 years for 2 years at level 3 probation. This probation runs at the same time as the probation for Rape 3rd Degree charge.

26. Mr. Karpov is registered as a Tier 3 sex offender which includes full community notification including his photo being posted on the internet as a sex offender.

27. Mr. Karpov also must undergo a sexual disorders counseling program.

28. I am that sexually abused child that Vladimir Karpov went to prison for.

29. Mr. Karpov is ordered to have no contact with me, my family or my residence. He also cannot have any contact with any one under the age of 18.

30. Vladimir Karpov has threatened that when he leaves prison, he will have me killed.

31. His child Olga Karpov reported to me not to go visit him in prison as advised by my therapist because he is very angry and wants to make me pay for locking him up.

32. Svetlana Karpov is domiciled in Delaware.

33. Svetlana Karpov is Vladimir Karpov's wife.

34. Svetlana Karpov is a white female.

35. Svetlana Karpov is a naturalized citizen of the United States.

36. Svetlana is approximately 45 years of age.

37. Svetlana signed over nearly all of Vladimir's property to herself and upon information and belief will do so again once informed of this law suit.

### THE ACTS CONSTITUTING THE COMPLAINT

38. When seven years old in 2001, I was removed by artifice and trick from my adoptive parents named Anna and Slavik Horbaty from the Ukraine in August, 2001 by Vladimir and Svetlana Karpov.

39. I was adopted by the Horbatys because my Russian mother and my African father had me while both were in college. My father was an African exchange student. He left after a semester was finished having no knowledge of my mother's pregnancy. Then, my mother delivered me and left me at the hospital and that is how I ended up with the Horbatys. Later, my mother met another man who she was engaged to and became pregnant by. He got drunk and stabbed her to death getting ten years in a Soviet prison.

40. Vladimir Karpov executed documents separating me from my family adopting me legally and importing me to the United States.

41. Vladimir based his adoption on giving me a better life in the United States free from the poverty of living in the Ukraine.

42. Upon bringing me home, I had approximately one week to become accustomed to his home and family.

43. Then, Vladimir began asking me questions: have I ever seen a penis before, or whether my uncles showed me their penises.

44. Vladimir told me that Anna Horbaty told him that I had a problem with touching my genitals.

45. Then he told me that the way they punish kids in America is by fondling their genitals. Then he began to fondle my genitals.

46. He would enter my bedroom, sit at my bed and over a period of approximately a week, stroked my genitals with his right hand.

47. He did this several times in that first week and each time stroked me more and then began inserting his finder into my vagina.

48. I felt abused, humiliated, harassed, degraded and Vladimir asked whether it hurt.

49. I did not answer.

50. Vladimir Karpov did this against my will.

51. I was moving away from him.

52. Vladimir would pull me back into position and he would continue his strokes and vaginal penetrations.

53. As that first week passed, he would put all his children to bed and then he would come into my room to fondle my genitals and to perform oral sex on me.

5

54. He did this by pulling away my blanket, pushing aside my night gown, pulling off my panties and licking my external genitals with his tongue.

55. Vladimir asked me if I liked it.

56. This night time sexual contact proceeded for two years.

57. During this period, no matter the location he would just perform oral sex on me as long as we were alone.

58. There was no day time sexual activity because he was always at work.

59. When I turned ten years of age, I told Svetlana's second oldest daughter Olga, "Dad was touching me sexually." Olga yelled at me and did not believe me at first. Olga the next day went and told Svetlana.

60. Svetlana told me that she knew that Vladimir had that "problem" because he sexually fondled Svetlana's sister, Sasha.

61. Svetlana then told me she has many children by Vladimir and was not interested in having adopted me in the first place.

62. This meant that Vladimir had the interest to adopt me obviously for sexual reasons so that Vladimir would not sexually fondle her biological children.

63. Svetlana packed up with Olga and left for Russia on a trip after saying what Vladimir was doing to me.

64. Vladimir was home. At this point, both vaginal and oral sex on me began to occur in the day time as well as the night time.

65. Sex consisted of his forcing his erect penis into my vagina and then ejaculating on my stomach or legs.

66. This sexual contact caused pain which caused me to cry. Vladimir kept asking if he was hurting me. I would say it hurts but Vladimir would not stop. He would pull out and ejaculate on my stomach or legs.

67. On some occasions, Vladimir would have sex with me in the night time. Here, he would call for me and make me go with him to the basement, the playroom or the sewing room. He would start by reaching under my skirt for my crotch, fondling my labia until he became erect, lay me down and remove my panties and insert his erect penis into my vagina and ejaculate on my stomach.

68. Vladimir would never do it in my bedroom because Svetlana's mother Katya knew this was going on and Vladimir was trying to avoid her.

6

69. I started failing school because I could not stay awake. One ruse was that Svetlana made Vladimir my tutor and he would tutor me all night which means he would have sex with me. Also, Vladimir would show me pornography on his office computer and his DVD player. After ejaculating and cleaning me up by using his collection of face cloths and then sending me into a shower, he would send me to bed and I would wake up exhausted.

70. As an aside, my school, The Tome School, began to suspect something. Administrators brought in a child protective services worker who would ask me what was going on at home and I would say "nothing".

71. I said nothing because I was scared.

72. I was scared because I had no way of proving what Vladimir was doing. I knew Svetlana would deny this and I knew all of her children would deny this.

73. Vladimir conditioned me to accept his sexual contacts from the beginning by making me believe girls get punished that way along with statements that he paid for me and I owed him.

74. This combination of brainwashing and threats led me to accept the sex and keep quiet about what was happening to me.

75. Also, Vladimir made substantial monetary contributions to the schools and churches I attended.

76. I knew this was hush money because I knew no one in church or school would do anything about what was happening to me because they did not want to lose the contributions.

77. Another major factor for my not sleeping is the excruciating pain I was suffering with each sexual penetration. As a ten year old girl, I was physically not able to maintain sexual intercourse at all. Each episode was painful and I cried each time. The pain kept me awake.

78. I was not paying attention to my school work.

79. Vladimir threatened me repeatedly to stay quiet. He would argue that I owed him for bringing me to America and no one would believe me and I would be the reason that the family would break apart and the kids would hate me.

80. When Svetlana would leave the area, Vladimir demanded I clean his room. When I would enter his room to clean it, he would lock the door and he would give me a lecture about not telling anybody and how I would ruin the family. He told me I owed him money for bringing me here.

7

81. He would pick me up, place me in bed and lift my dress and would commence sexual intercourse with me. Before ejaculating, he would pull out. Afterwards, he would take special care to wash my clothing and to wipe me down and tell me to go take a shower.

82. He maintained a pile of face cloths next to his bed in a drawer that he would use to wipe me down.

83. Meanwhile, Svetlana beat me physically.

84. She beat me because I was the lover of her husband.

85. I believed her to be my adoptive mother and I believed she loved me.

86. I missed many days of school because of bruises. Svetlana used phone chords tied together on my arms and back. In the Tome School, uniforms were the norm so shirts hid my bruises. Back in elementary school, Elkton Christian School and West Park Place Elementary School, Svetlana kept me from school because of the bruises.

87. I told Svetlana that the school has been asking me questions. This was approximately 2004. Svetlana told me not to say anything and that it was against the law for them to talk to me without a parent's permission. I saw Svetlana then tell Vladimir that the school was suspicious and that he had to be careful.

88. Svetlana's beatings had various insignificant reasons: I would speak English at the dinner table, I did not memorize a poem, I did not write a letter to family in the Ukraine. Svetlana would tell me that her sexual life with Vladimir was not all that great and I took that based on common sense that Svetlana's jealousy was the real reason for the beatings.

89. As for Svetlana's sex life with Vladimir, Svetlana told me there were certain things as a Christian that she did not allow. Svetlana did not allow oral sex.

90. Vladimir's big thing was oral sex which I refused to perform. So he stuck to licking my genitals and forcing his erect penis into my vagina.

91. During one contact, his daughter Victoria hid under my bed while playing hide and seek.

92. Vladimir came in to my bedroom without knowing his daughter Victoria was hiding under my bed. Vladimir sat at a desk and I stood next to him. Vladimir tried to get me to go downstairs but I would not budge. He picked up my dress and fondled my genitals through my underwear while Victoria was under the adjacent bed.

8

93. Vladimir finished fondling my genitals. When Vladimir left, Victoria ran out of the room to her room. Vladimir went to Victoria and then returned to me and told me Victoria did not see anything.

94. Victoria suddenly stopped communicating with me. This is how I knew Victoria saw something that night.

95. Victoria ended up telling Svetlana and several of the children. Svetlana rushed upstairs finding Vladimir and me studying together and began to yell at Vladimir that all the kids know.

96. Svetlana's children Edwin and David would come up to me and ask whether this was true. Kristina asked me whether this was true. These questions were always asked one-on-one in private because Vladimir and Svetlana would not allow public discussion about this.

97. Suddenly, Svetlana's sister Sasha left the house. She got engaged. As part of the Ukrainian engagement process, Sasha had to confess her virginity to her new husband in church. This she could not do because before I was imported into America, Vladimir was sexually involved with Sasha. I know this because Svetlana told me that Sasha was psychologically damaged and she as a child was responsible for sexually arousing Vladimir and causing sex between her and Vladimir to happen.

98. The family church run by Pastor Vysotsky, now discovered Vladimir's conduct and cancelled his membership. Sasha informed the church's Pastor and Deacon this was happening to me too.

99. Sasha left, married and disappeared in Pennsylvania.

100.    After the revelation of Vladimir's behavior, the sexual contacts with me slowed down but did not stop.

101.    Vladimir was angry because the secret was out.

102.    Then, my adoptive family from the Ukraine, the Horbatys, arrived in the United States and I began to demand visits with them.

103.    I told my adoptive mother, Anna Horbata, what happened because her community in the Ukraine heard what happened.

104.    Anna told me to move in and I did.

105.    Vladimir started calling me every day to return. He said the Horbaty's could get into trouble for kidnapping me. He said I was a "Karpov" and that I

9

would marry his son "David". He started to appear at my school asking questions about me.

106.    I told Vladimir I would never tell anyone if he let me go. I left and I told everybody.

107.    I am now telling this court.

Listing of Properties at Time of Vladimir's Arrest

108.    During the time I was sexually abused, defendants acquired among the following properties:

a. 482 West Chestnut Hill Road (their residence). Newark, DE

b. 3401 West Jackson Street, Pensacola, FL (duplex building with several apartments).

c. 68 Christiana Crossing, Newark, DE.

d. Carver Gardens Apartments, Gainesville, FL (Carver Gardens LLC) (100 apartment units for Section 8 residents).

e. Oakwood Terrace (filed bankruptcy, Chapter 11, for failure to close with Graystone Financial).

The listing of LLC's at time of Vladimir's Arrest were:

a. Chestnut Hill, LLC .

b. Carver Gardens, LLC

c. Royal Place Properties, LLC

INJURIES

109.    I am diagnosed with Post Traumatic Stress Disorder.

110.    I am unable to take medication because once I attempted to commit

suicide, I am prohibited from being prescribed these medications.

10

111. I have bad feelings about sex, overvaluing sex, and sexual identity problems. I suffer from hypersexual behaviors as well as avoidance of or negative sexual encounters.

112. I am damaged goods and I have feelings of guilt and responsibility for the abuse or the consequences of disclosure of defendant's abuse.

113. I engage in self-destructive behaviors such as substance abuse, risk-taking acts, self-mutilation, suicidal gestures and acts.

114. I suffer from the effects of betrayal: the undermining of trust in those people who are supposed to be protectors and nurturers. I suffer from anger and borderline functioning. I avoid investment in others, manipulating others, re-enacting the trauma through subsequent involvement in exploitive and damaging relationships, and engaging in angry and acting-out behaviors.

115. I feel powerlessness. This includes both my perception of vulnerability and victimization and a desire to control or prevail, often by identification with the aggressor. I exhibit aggression and exploitation of others. I also suffer from dissociation and running away; behavioral manifestations of anxiety, including phobias, sleep problems and eating problems.

116. I am unable to continue with education.

117. I am unable to get and keep employment.

118. I am now a public charge.

119. My entire family avoids me.

120. I suffer from a constant fear of being killed by Vladimir Karpov despite a permanent order of protection.

121.     I worry that I will share in none of Karpov's real estate holdings and its
income which defendants built up and acquired while they sexually abused me.

## CLAIMS

Claim 1: Childhood Sexual Abuse against both Defendants

122.     Plaintiff repeats and realleges each and every preceding paragraph as if
pleaded anew.

123.     Vladimir Karpov forced the minor plaintiff to engage in vaginal sexual
intercourse.

124.     Vladimir did so by plaintiff's lack of ability to consent because of
plaintiff's age of minority

125.     Vladimir engaged in sexual intercourse with plaintiff

126.     Svetlana knew about this course of sexual conduct by Vladimir

127.     Svetlana did nothing to inform authorities or otherwise stop Vladimir from
continuing sex with the minor plaintiff.

128.     Plaintiff suffered injuries listed above and claims compensatory and
punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 2: Intentional Infliction of Emotional Distress against both Defendants

129.     Plaintiff repeats and realleges each and every preceding paragraph as if
pleaded anew.

130.     Defendants acted intentionally to import plaintiff for the purpose of
providing child vaginal availability to Vladimir Karpov.

131.     Defendant's conduct was extreme and outrageous.

12

132.     Plaintiff was distressed by being repeatedly raped vaginally and
sodomized orally.

133.     Plaintiff suffers severe emotional distress as a result of defendant's
conduct.

134.     Plaintiff suffered injuries listed above and claims compensatory and
punitive damages against Vladmir Karpov and Svetlana Karpov.

Claim 4: Negligent Infliction of Emotional Harm against both Defendants

135.     Plaintiff repeats and realleges each and every preceding paragraph as if
pleaded anew.

136.     Defendants as plaintiff's adoptive parents owe plaintiff a duty of care
consistent with their parental obligations.

137.     Defendant deviated from that duty of care by allowing Vladimir to rape
plaintiff's vagina and stimulating her vagina orally from her seventh year to her
fourteenth year of life.

138.     Plaintiff suffered injuries as a direct result of Vladimir's continuous raping
of the child plaintiff listed above and claims compensatory and punitive damages
against Vladimir Karpov and Svetlana Karpov.

Claim 5: Battery against both Defendants

139.     Plaintiff repeats and realleges each and every preceding paragraph as if
pleaded anew.

140.     Defendant intended to cause offensive or harmful contact to plaintiff and
such contact actually did take place.

141.    Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 6: Assault against both Defendants

142.    Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

143.    Defendant threatened to commit vaginal intercourse and oral copulation with plaintiff intending to actually commit these acts.

144.    Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 7: False Imprisonment against both Defendants

145.    Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

146.    Defendants adopted plaintiff and restricted her movements to defendant's mansion in Delaware.

147.    This restriction of movement was complete.

148.    Defendants summoned plaintiff for repeated rapes in closed rooms with locked doors.

149.    Defendant Vladimir Karpov mounted plaintiff and restricted her movements until he completed his act by an orgasm.

150.    This limitation of movement lasted seven years.

151.    Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 8: Abduction against both Defendants

14

152.     Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

153.     Defendants removed plaintiff from her adoptive family in the Ukraine.

154.     Defendants did so with artifice and trick.

155.     Defendants kept plaintiff away from the Horbatys for seven years.

156.     Defendants sexually abused plaintiff all that time.

157.     Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 9: Seduction against both Defendants

158.     Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

159.     Defendant promised plaintiff to provide an adoptive home to plaintiff in the United States.

160.     Plaintiff was seven years of age at that time.

161.     Plaintiff accompanied Defendants to the United States.

162.     Defendant engaged in sexual intercourse with plaintiff as a minor.

163.     Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 10: Child Exploitation against both Defendants

164.     Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

165.     Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladmir Karpov and Svetlana Karpov.

15

Claim 11: Emotional Abuse against both Defendants

166.    Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

167.    Defendants caused or could cause injury to the psychological capacity or emotional stability of plaintiff, resulting in serious behavioral, cognitive, emotional, or mental disorders.

168.    Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladmir Karpov and Svetlana Karpov.

Claim 11: Neglect

169.    Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

170.    Defendants failed to provide for the plaintiff's basic needs by failing to protect plaintiff from ongoing vaginal and oral sexual abuse.

171.    Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladmir Karpov and Svetlana Karpov.

Claim 12: Abandonment against both Defendants

172.    Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

173.    Defendants placed plaintiff in an unsafe place intending for plaintiff not to be safe.

174.    Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 13: Gender Violence against both Defendants

16

175. Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

176. Plaintiff is a defenseless female and was a child during all times in this complaint.

177. Defendant raped plaintiff as he wished and when he wished.

178. Defendant threatened plaintiff as he wished and when he wished.

179. Defendant committed these acts in the home.

180. Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladimir Karpov and Svetlana Karpov.

Claim 14: Loss of Consortium against both Defendants

181. Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

182. Defendant removed plaintiff from the care and love of the Horbatys and kept plaintiff away for years.

183. Horbatys remained away for years.

184. Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladmir Karpov and Svetlana Karpov.

185. Plaintiff repeats and realleges each and every preceding paragraph as if pleaded anew.

186. Plaintiff suffered injuries listed above and claims compensatory and punitive damages against Vladmir Karpov and Svetlana Karpov.

PRAYER FOR RELIEF

17

WHEREFORE plaintiff Karolina Karpov prays for entry of judgment against defendants that:

1 Compensatory damages in the amount of $1,000,000 or transfer of ownership of all defendants' properties to plaintiff;

2 Special/punitive damages in the amount of $10,000,000 or transfer of all defendant's properties to plaintiff;

3 That all costs of this suit be awarded;

4 That Vladimir and Svetlana Karpov be enjoined from appearing before me or communicating with me either personally or through third parties;

5 Such other and further relief as the court may deem just and proper.

Caroline Karpov
KAROLINA KARPOV

Sworn to before me this
4th day of May, 2012

NOTARY PUBLIC

18

UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAROLINA KARPOV,
      Plaintiff,

Civil Action No.
12:1411-GMS

    -against-

VLADIMIR KARPOV, et al.
      Defendant.

Answer to Original Complaint filed
In New York District Court, from
Vladimir Karpov, Defendant.

Defendant Vladimir Karpov (hereinafter referred to as "Defendant or I"), hereby respond
to Plaintiff's Complaint (the "Complaint"), as follows:

## ANSWERING ALLEGATIONS

1. Deny
2. Deny
3. Deny
4. Deny
5. Admit
6. Admit
7. Deny- now plaintiff is 19
8. Admit
9. Deny- no proof of this allegation
10. Deny
11. Deny
12. Deny- plaintiff is bi-racial, and documented as WHITE
13. Admit
14. Admit
15. Admit
16. Deny- Pastor Vladimir Vysotskiy, Senior
17. Deny- plaintiff's FOSTER parents were Annya and Slavik Horbatiyy
18. Admit
19. Admit
20. Admit
21. Deny- 56 years of age
22. Deny- I built a substantial real estate business only before my sentencing, in 2007.
    Business went under bankruptcy, filed in 2007, approved in 2009.
23. Deny- I am incarcerated at JTVCC
24. Not sure
25. Not sure

Exhibit B

26. Deny- registration, as I understand. must happen at the time of release.
27. Not sure
28. Admit- but there is no medical proof. I took plea bargain to avoid lifetime in prison.
29. Deny- I can have contact with my underage children.
30. Deny- this never occurred. Also, I have never contacted plaintiff, not directly, nor through 3rd party. Otherwise, I would have been violating the no-contact order. There was NEVER a complaint of this from plaintiff.
31. Deny- this never occurred. Plaintiff is lying.
32. Deny- Svetlana Karpov is no longer domiciled in Delaware
33. Admit
34. Admit
35. Admit
36. Deny- Svetlana Karpov is now 43
37. Deny- Svetlana Karpov did no such thing.
38. Deny- Foster mother, Annya Horbatiyy begged me to adopt plaintiff and take her to America for a better life. No documents were executed.
39. Deny- plaintiff was never adopted by Horbatiyy family. She was fostered by them, until they just pushed her into my wife's and my care, telling us that they wanted better life for her. In reality, they were tied down to Ukraine, and would be unable to immigrate to United States since they did not qualify as adoption parents. If they left, Karolina would have no one to take care of her.
40. Deny
41. Deny- in a court testimony, signed by the Ukrainian Adoption Court, Slavik Horbatiyy states that the reason he would like us to adopt Karolina is because they want Karolina to have a better life, and to never suffer from racism since bi-racial and blacks were not socially accepted in the Ukrainian society
42. Deny
43. Deny
44. Deny
45. Deny
46. Deny
47. Deny
48. Deny
49. Deny
50. Deny
51. Deny
52. Deny
53. Deny
54. Deny
55. Deny
56. Deny
57. Deny
58. Deny
59. Deny
60. Deny
61. Deny

62. Deny
63. Deny
64. Deny
65. Deny
66. Deny
67. Deny
68. Deny
69. Deny
70. Deny
71. Deny
72. Deny
73. Deny
74. Deny
75. Deny
76. Deny
77. Deny
78. Deny
79. Deny
80. Deny
81. Deny
82. Deny
83. Deny
84. Deny
85. Deny
86. Deny
87. Deny
88. Deny
89. Deny
90. Deny
91. Deny
92. Deny
93. Deny
94. Deny
95. Deny
96. Deny
97. Deny
98. Deny
99. Deny
100.     Deny
101.     Deny
102.     Deny
103.     Deny
104.     Deny
105.     Deny
106.     Deny
107.     Deny

108.     A. Deny
         B. Admit
         C. Deny
         D. Admit
         E. Admit
         A. Deny
         B. Admit
         C. Admit

109.     Deny
110.     Deny
111.     Deny
112.     Deny
113.     Deny
114.     Deny
115.     Deny
116.     Deny
117.     Deny
118.     Deny
119.     Deny
120.     Deny
121.     Admit- there is nothing for plaintiff.
122.     Deny
123.     Deny
124.     Deny
125.     Deny
126.     Deny
127.     Deny
128.     Deny
129.     Deny
130.     Deny
131.     Deny
132.     Deny
133.     Deny
134.     Deny
135.     Deny
136.     Deny
137.     Deny
138.     Deny
139.     Deny
140.     Deny
141.     Deny
142.     Deny
143.     Deny
144.     Deny
145.     Deny

| | |
|---|---|
| 146. | Deny |
| 147. | Deny |
| 148. | Deny |
| 149. | Deny |
| 150. | Deny |
| 151. | Deny |
| 152. | Deny |
| 153. | Deny |
| 154. | Deny |
| 155. | Deny |
| 156. | Deny |
| 157. | Deny |
| 158. | Deny |
| 159. | Deny |
| 160. | Deny |
| 161. | Deny |
| 162. | Deny |
| 163. | Deny |
| 164. | Deny |
| 165. | Deny |
| 166. | Deny |
| 167. | Deny |
| 168. | Deny |
| 169. | Deny |
| 170. | Deny |
| 171. | Deny |
| 172. | Deny |
| 173. | Deny |
| 174. | Deny |
| 175. | Deny |
| 176. | Deny |
| 177. | Deny |
| 178. | Deny |
| 179. | Deny |
| 180. | Deny |
| 181. | Deny |
| 182. | Deny |
| 183. | Deny |
| 184. | Deny |
| 185. | Deny |
| 186. | Deny |

*Please take note that I cannot file electronically, as I have no internet access.

## RESERVATION OF RIGHTS CLAUSE

Defendants reserve the right to raise additional affirmative defenses.

WHEREFORE, judgment is demanded dismissing the Complaint against the Defendant,

Svetlana Karpov, with prejudice, with costs and disbursements, including such other and further

relief as this Court may find just and proper.

Dated: SET FORTH Smyrna, Delaware
      March _06_ , 2013

VLADIMIR KARPOV
SBI# 433133
1181 PADDOCK RD
SMYRNA, DE 19977

Affidavit of Service

I, Vladimir Karpov, am affirming that I have prepared and certified-mailed this answer to:

1. The United States District Court of Delaware
   J Caleb Boggs Federal Building
   844 North King Street
   Unit 18
   Wilmington, DE 19801-3570

2. Plaintiff, Karolina Karpov
   305 Mill Street
   Apt 2A
   Poughkeepsie, NY 12601

3. Defendant, Kristina Multani
   402 Blaine Avenue
   Apt 2C
   West Berlin, NJ 08091

4. Defendant, Victoria Kryachkov
   PO BOX 80245
   Lincoln, NE 68501

5. Defendant, Emily Karpov
   482 W Chestnut Hill Rd
   Newark, DE 19713-1102

6. Defendant, Svetlana Karpov
   482 W Chestnut Hill Rd
   Newark, DE 19713-1102

March 02, 2013

UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

KAROLINA KARPOV,
        Plaintiff,

                            Civil Action No.
                            12:1411-GMS

    -against-                        Answer to Original Complaint filed
                                    In New York District Court, from

VLADIMIR KARPOV and               Svetlana Karpov, Defendant.
SVETLANA KARPOV
    Defendants.
-----------------------------------------------------------

Defendants Svetlana Karpov (hereinafter referred to as "Defendant or I"), hereby
respond to Plaintiff's Complaint (the "Complaint"), as follows:

## ANSWERING ALLEGATIONS

1. Deny- none of these actions were caused by me.

2. Deny- the court of the State of New York does not have the right to hear
this case as it has no jurisdiction over defendants.

3. Deny- The court of the state of New York does not have the right to hear
this case as it has no jurisdiction over defendants.

4. Deny-The court of the state of New York does not have the right to hear
this case as is has no jurisdiction over defendants.
Paragraphs 5-8 are subject to investigation.

9. Deny- I do not believe any of these allegations to be true.

10. Deny- I do not believe this allegation to be true as I was never a witness to
any of the acts plaintiff claims happened while residing in the Delaware
residence.

11. Deny- Karolina came into our home at the age of 7 years, 8 months, and
was peacefully returned to her foster family at the age of 13 years and 2
months.

12. Deny- Karolina is not a black female. On the contrary, she is white, which
can be proven by official documentation. Upon adoption, Defendants

Exhibit C

Vladimir Karpov and I were told we could decide to either put "black" or "white" on all documents. Karolina is bi-racial, but considered white.

13. Admit- All listed children are Karolina's adoptive siblings.

14. Admit- a.

Admit-b. Clarification- Presently Deceased but Alive while Karolina resided with Defendants.

Admit-c. Clarification- Presently Deceased but Alive while Karolina resided with Defendants.

Admit-d.

15. Admit-a.

Admit-b.

Admit-c.

16. Deny- Vladimir Vysotskiy Senior

17. DENY- Karolina's original FOSTER parents, in Ukraine, were Annya & Slavik Horbatiyy

18. Admit

19. Admit

20. Admit

21. Deny- Vladimir is 56 years old

22. Deny- Vladimir built a substantial real estate business from 1999-2007, which then in 2009, went under bankruptcy.

23. Deny- Vladimir is incarcerated in JTVCC

24. Not Sure

25. Not sure

26. Not sure

27. Not sure

28. Deny- Vladimir was accused of sexual abuse of Karolina, but there was never any medical evidence to prove that Karolina was raped. Vladimir accepted a plea bargain so that he wouldn't spend the rest of his life in prison.

2

29. Admit & Deny- I am aware that Vladimir cannot contact Karolina, by court order, but I have never seen a court order that he cannot contact plaintiff's family or residence (not that he would want to). Vladimir can have contact with all his children who are under 18.

30. Deny- this is lie.

31. Deny- I spoke with my daughter Olga Mervyak. Olga claims she has never said this.

32. Deny- I am no longer domiciled in Delaware.

33. Admit

34. Admit

35. Admit

36. Deny- I am 43 years of age.

37. Deny- I have not signed anything over to myself.

38. Deny- Slavik and Annya Horbatiyy begged Vladimir and me, Svetlana Karpov, to take Karolina to the United States so that Karolina would have a better life and children wouldn't harass her in school. They wanted Karolina to feel accepted and in Ukraine that wasn't so. Annya Horbatiyy claimed that it was very difficult to discipline Karolina from early childhood, as Karolina would lie about anything and everything.

39. Deny-Karolina was never adopted by Annya Horbatiyy and Slavik Horbatiyy. They foster parented Karolina while she was in Ukraine. Karolina's biological mother, who is Ukrainian, is deceased and no one is aware of who the father is. Also, she never attended college.

40. Deny.

41. Deny- Annya Horbatiyy pleaded for Vladimir to take Karolina, as explained before in paragraph 38.

42. Deny- It took Karolina a while to get accustomed to our home. She was very shy and timid, but upon learning the English language, she was doing well in school as well as in the home.

3

Paragraphs 43-58. Deny- I was never a witness, and as stated in all the investigatory and prosecutorial data, I was never aware or around when any of the acts that Karolina alleges, occurred.

59. Deny- This allegation never occurred

60. Deny- This allegation is a lie and this never occurred.

61. Deny- I always told Karolina that I love her and accept her as my own daughter.

62. Deny- This allegation is mockery.

63. Deny- This allegation is a lie. Olga and I travelled to Ukraine in 2003. I was pregnant at that time with the 12th child, and the pregnancy was high risk because of the thyroid disease. In Ukraine, I was seen by a thyroid specialist.

Paragraphs 64-67. Deny- these allegations are all false as I never witnessed any of the acts described by Karolina for all time that she lived with me and my family!

68. Deny- Vladimir never avoids my mother, Karolina's adoptive grandmother, and never has. He has the utmost respect for her and loves and appreciates her. Also, my mother states she has never suspected anything like the allegations that Karolina states. She was never suspecting anything at any time.

69. Deny- I never made Vladimir, Karolina's "tutor". Vladimir would help all the children with their homework after school, as well as Karolina. The children were always together, doing homework, studying, and doing projects. Also, Karolina did not fail school. She would try her best, and at times yes, she would bring home unacceptable grades, but she always tried her best.

70. Deny- This allegation NEVER occurred. It would have been documented, and I, as well as my husband, would be contacted by the child protective services, by protocol.

4

Paragraph 71-74. Deny- These allegations are mockery and defamation. I was never a witness to any of these allegations.

75.     Deny- I always kept records and ledger balances of all finances, and knew where every penny was spent. Vladimir never made any contribution to any school, organization, or church that we attended. The school tuition is not a contribution, and church offerings were very small. We did make large contributions to orphanages in Ukraine though.

76.     Deny

Paragraph 77-79. Deny- Karolina shared a bedroom at all times, as did the rest of the children. Boys had their own rooms and girls had their own as well. Karolina shared her room with different girls all the time. There were 19 people living in the house, 13 children, 2 "grandpas", 1 "grandma", 1 aunt, and my husband and I. No one ever reported at any time that Karolina spent nights crying or something was happening. She was always a very happy child.

80.     Deny- Defamation! Karolina is stating such allegations that never occurred. This allegation would definitely be in all privileged records, and it isn't. On the contrary, all records state that "Vladimir would (impose actions) when Svetlana wasn't around." Clearly Karolina's story develops drastically.

81.     Deny

82.     Deny

83.     Deny- I never beat Karolina. All children, grandparents, and close family members, can witness that Karolina was almost never disciplined by belt, much less, beaten. This allegation is made up to try and have something against me for which I can be blamed. I was never blamed for any such act on any of my children, including Karolina.

84.     Deny- This is defamation.

5

85. Admit- Karolina did accept me as her adoptive mother and did love me. We never had problems between each other. We spent family time together with the all children and my mother, travelling to different states, visiting friends and family.

86. Deny- This allegation is a lie. I never beat Karolina, tied her nor did I keep her from school. Her attendance records are very good actually.

87. Deny

88. Deny- I literally have no words for these allegations.

89. Deny

90. Deny

91. Deny

92. Deny

93. Deny

94. Deny

95. Deny

96. Deny

97. Deny- This allegation never occurred.

98. Deny

99. Deny- Alexandra (Zaloznaya) Sitnik, referred to as Sasha by Karolina, decided marriage would be the best option for her since she didn't want to be dependent on me or my husband, and married. There is not "set" Ukrainian tradition, as claimed by Karolina in paragraph 97. Also, Sasha did date more than one man. She brought to our home a gentleman to introduce him to the family, but decided that marrying him would be a mistake, so she settled for another gentleman. She dated just like any regular teenage girl. At age 22 she married her husband.

100. Deny

101. Deny

102.    Deny- We were all very excited Karolina's foster family was coming, and made several visits to the family before Karolina decided to live with them. Karolina never demanded to visit them.

103.    Deny

104.    Deny- Annya Horbatiyy asked Vladimir and I to allow Karolina to live with them since she was originally from their family. Vladimir then arranged with Annya and Slavik Horbatiyy a family reunion and Karolina was cordially and peacefully written over to the Horbatiyy Family.

105.    Deny- This allegation never happened. This allegation is completely absurd.

106.    Deny- Karolina never spoke to me about any of this. Before she left to live with Horbatiyy Family, I personally spoke to Karolina and she never admitted anything, nor did she ever speak about anything. She said that she missed her foster family, and would like to move in with them.

107.    Deny

108.    Admit and Deny-

    a.    Deny- We lived in this residence while Karolina was with us.

    b.    Admit- This property was mortgaged in 2006 to house workers that worked on the apartment complex.

    c.    Deny- This was really never our property. Vladimir and I purchased this property and rewrote the deed in 2006 to Andrey Karpov, while the property was mortgaged. This was Andrey Karpov's condominium which he lost to foreclosure a while ago.

    d.    Admit

    e.    Admit

    _____

    a.    Deny- There is no such pre-existing or existing LLC

    b.    Admit

    c.    Admit

7

109. Deny- Since Karolina has moved from our residence, she has continued to move on from her foster family, then to an aunt, then onto her own, and so on. I do not know what has happened to her or where she is, since she has left my care. There is no evidence to prove that she has post-traumatic stress disorder occurring from living with my family.

110. Deny- There is no proof of this ever happening or that her supposed attempt at suicide was from events that occurred while living in our home.

111. Deny- Again, there is no proof of this.

112. Deny- These allegations were all written by Vera and Peter Lomtevas, therefore none of these allegations are true.

113. Deny

114. Deny

115. Deny

116. Deny- Karolina has graduated early from high school. She completed her high school course well enough to be considered an early graduate. She went on to Ridley Lowell Business and Technical School to become a cosmetologist. She is pursuing her career. She mentioned this to my daughter Victoria Kryachkov while we both came to Duchess County Family Court for a trial regarding child support for Karolina Karpov.

117. Deny- Karolina has been employed at An Tyrice Beauty Salon as a receptionist for quite a while. Also, she babysits and finds other things to do.

118. Deny- Karolina was coached by Vera and Peter Lomtevas to become a public charge. In doing so, on her 18th birthday, Karolina became emancipated and left her aunt's residence to live on her own, and purposefully, as well as strategically, become a public charge.

119. Deny- Our family does not avoid Karolina. Karolina chooses not to communicate with us after she filed this case in court against us. On her previous and most recent birthday, my children have sent her flowers, birthday presents, and Christmas presents. On Thanksgiving 2010, Karolina even visited all of us in the Delaware Residence with the aunt that she lived with. We had tea time

8

together, pleasant conversations, and all the children and I were happy to be
reunited.

120.    Deny- This allegation is bogus. Vladimir has no intention of going back to
prison.

121.    Not applicable- there is nothing to share and I did not sexually or
physically abuse Karolina.

Paragraph 122- 186. Deny- All allegations are false and can be proven that I was
not involved. All privileged documents and every single testimony by every
individual and organization that investigated the criminal case of Delaware State
vs. Vladimir, states that Karolina Karpov says that I was not around and did not
know of what was happening.

*Please take note that Vladimir Karpov already has a no-contact order issued by the judge
relating to Karolina Karpov. There is no reason why a no-contact order should be issued
upon me relating to Karolina.

9

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Plaintiff's Complaint fails to state claims upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Karolina Karpov's allegations are false. From the first to the last motion that Karolina has filed in the Family Court of Dutchess County of New York, to the first and last motion she has filed in the New York District Court as well as the Delaware District Court, her story and allegations change drastically. Therefore, it is almost impossible to distinguish the truth from her lies. And also, this motion was written by Peter and Vera Lomtevas.

### RESERVATION OF RIGHTS CLAUSE

Defendants reserve the right to raise additional affirmative defenses.

WHEREFORE, judgment is demanded dismissing the Complaint against the Defendant, Svetlana Karpov, with prejudice, with costs and disbursements, including such other and further relief as this Court may find just and proper.

Dated: SET FORTH Lincoln, Nebraska
March 1, 2013

SVETLANA KARPOV

10

Affidavit of Service

I, Svetlana Karpov, am affirming that I have prepared and mailed this answer to:

1. The United States District Court of Delaware
   J Caleb Boggs Federal Building
   844 North King Street
   Unit 18
   Wilmington, DE 19801-3570

2. Plaintiff, Karolina Karpov
   305 Mill Street
   Apt 2A
   Poughkeepsie, NY 12601

3. Defendant, Vladimir Karpov
   1181 Paddock Road
   SBI#433133
   Smyrna, DE 19977

4. Defendant, Kristina Multani
   402 Blaine Avenue
   Apt 2DC
   West Berlin, NJ 08091

5. Defendant, Victoria Kryachkov
   PO BOX 80245
   Lincoln, NE 68501

6. Defendant, Emily Karpov
   482 W Chestnut Hill Rd
   Newark, DE 19713-1102

11



**JOSEPH R. BIDEN, III**
ATTORNEY GENERAL

**DEPARTMENT OF JUSTICE**
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

CRIMINAL DIVISION (302) 577-8500
FAX (302) 577-2496
CIVIL DIVISION (302) 577-8400
FAX (302) 577-6630
TTY (302) 577-5783

YAROSLAV HORBATTYY
837 W Forest Grove RD

August 04, 2007

VINELAND, VINELAND 08360

Re:  State vs. VLADIMIR KARPOV                              Case:0706009021

Dear YAROSLAV HORBATTYY

We are writing to inform you that the above named suspect, called a "defendant"
by the courts, has been arrested and brought to the Justice of the Peace Courts
to have bail set.  This is the first step in the criminal court process.

On August 03, 2007, the defendant appeared in the Justice of the Peace Court to
answer to the charges as shown on the attached. The defendant was detained for
lack of secured bail of $2,530,000.00 The defendant was also ordered to obey
certain conditions of bail,  These conditons are specified on the attached page.
   Please keep this letter with you at all times.  If there is a violation of
these conditions of bail, please call 911 immediately.

The defendant is next scheduled to appear in NEW CASTLE COUNTY COURT OF COMMON
PLEAS on August 13, 2007 for PRELIMINARY HEARING.  Unless you receive a subpoena
from the Court, you are not required to attend this proceeding; however, you do
have the right to be present if you wish.

Enclosed is a copy of Court terms that you may find helpful.  If you have any
other questions or concerns, please contact the Victim/Witness Services Unit at
(302) 577-8500  It is your responsibility to keep this office informed if you
move or change your telephone number so that we can contact you about this case.

Sincerely,

**Glenn Disbrow**
Victim/Witness Services Unit

Exbit D



**DEPARTMENT OF JUSTICE**
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

CIVIL DIVISION (302) 577-8400
FAX (302) 577-6630
CRIMINAL DIVISION (302) 577-8500
FAX (302) 577-2496
FRAUD DIVISION (302) 577-8600
FAX (302) 577-6499
TTY (302) 577-5783

JOSEPH R. BIDEN, III
ATTORNEY GENERAL

New Castle County Office-Criminal

September 19, 2008

Yaioslaz Horbatyy
94 Rhobella DR
Poughkeepsie, NY 12603

## RE: STATE VS. VLADIMIR KARPOV
## I. D. NO: 0706009021

Dear Mr. Horbatyy,

On August 1, 2008, Mr. Karpov was sentenced. Effective July 3, 2007, he was sentenced to:

Rape 3rd Degree:

12 years at Level 5 (prison) suspended after serving 5 years followed 6 months at Level 4 (Halfway House). Next is 2 years at Level 3 (probation) where he will be monitored by the Adult Sex Offender Probation Unit. He will stay in prison at Level 5 until there is room at Level 4 (Halfway House).

Continuous Sexual Abuse of a Child:

7 years at Level 5 (prison) suspended after serving 2 years for 2 years at Level 3 Probation. This probation will run at the same time as the probation for Rape 3rd Degree charge.

Mr. Karpov is to register as a Tier 3 Sex Offender which includes full community notification and his information/picture will be posted on the Sex Offender Registry internet web site. Registration will begin when he is released from prison. Mr. Karpov will also have to complete a Sexual Disorders counseling program.

Lastly, Mr. Karpov is ordered to have no contact with Karolina Karpov, her family or her residence. He is also ordered to have no contact with any minor under the age of 18 years. If Mr. Karpov attempts to contact your daughter or family, immediately call 911.

If you have any questions, please feel free to contact me at (302) 577-8948.

Very truly yours,

Sheree L. Michaels, MSW
Victim/Witness Social Worker

xc: Donald Roberts, Deputy Attorney General

Exhibit E



news.com

Home Page > News > National > Stories

# Adopted Child Abused; Man Extradited to Del.

July 8, 2007 - 8:53am

MANTECA, Calif. - A man accused of repeatedly raping a girl he adopted from the Ukraine has agreed to be extradited to Delaware to face the charges.

Vladimir Karpov, 50, of Newark, Del., was arrested Tuesday at a hotel in Ripon, about 80 miles east of San Francisco, after a check of his car's license plate showed it was stolen. Police found he had a warrant for his arrest from Delaware on 50 counts of rape and a count of continual sexual abuse of a child.

Delaware police allege he began sexually abusing the girl shortly after adopting the then 7 year old during a 1999 trip to Ukraine.

Karpov pleaded no contest Friday in California to charges of possessing an unregistered firearm and the stolen license plate.

San Joaquin County Deputy District Attorney Brian Short reduced both counts to misdemeanors so Karpov could be extradited to face the child rape charges. San Joaquin County Superior Court Judge Jose L. Alva immediately sentenced Karpov to three years of informal probation and fined him $130.

Alva also set Karpov's bail at $2 million pending his transportation to Delaware.

Karpov was found with $15,000, a loaded handgun, and documents in which he alleged he was being accused of crimes he did not commit.

But Delaware authorities say the girl told her Ukrainian family recently of the abuse during a visit to their New Jersey home. The family had immigrated to New Jersey two years ago from the Ukraine.

Karpov left Delaware a few weeks ago as police were preparing the criminal charges. —

(Copyright 2007 by The Associated Press. All Rights Reserved.)

vote now

< Back



Video Encyclopedia

Introducing The Most Complete Brazilian Jiu Jitsu Video Series Ever Made

www.BJVideoEncyclopedia.com

Feedback - Ads by Google

Exhibit F

# News

**ACCUSED IN CHILD RAPE CONSENTS TO EXTRADITION**

By *Scott Smith*
July 07, 2007
Record Staff Writer

MANTECA - A man arrested at the Ripon Motel this week agreed in a court hearing Friday to be extradited to Delaware, where he is accused of repeatedly raping a girl he adopted from Ukraine.

Ripon police arrested Vladimir Karpov, 50, on Tuesday after a check of his car's North Carolina license plate revealed the plate was reported stolen. Police also discovered a warrant for his arrest in Delaware on 50 counts of rape and a count of continual sexual abuse of a child.

During a 1996 trip to Ukraine, Karpov adopted a 7-year-old girl and began sexually abusing her shortly after bringing her to his Delaware home, police said.

Karpov, who wore handcuffs and a jail-issued jumpsuit Friday, politely stood each time San Joaquin County Superior Court Judge José L. Alva addressed him in the court's Manteca branch. Alva asked Karpov to remain seated.

Karpov said it was his first time in court.

Karpov pleaded no contest to charges of possessing an unregistered firearm and the stolen license plate from his arrest in Ripon. San Joaquin County Deputy District Attorney Brian Short reduced both counts to misdemeanors because of the extradition, and Alva levied three years of informal probation and a $130 fine.

Alva also set Karpov's bail at $2 million pending his transportation to Delaware.

Contact reporter Scott Smith at (209) 546-8296 or ssmith@recordnet.com.



Ina Karpov
Mill Street
____ie NY 12601

Clerk of Court
U.S District Court
District of Delaware
844 North King Street
Wilmington DE 19801

